**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THEODORE MCELHONE,

    Plaintiff,

  v.

KATHLEEN SEBELIUS,

    Defendant.

No. C 12-06090 WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this appeal of a decision by the Medicare Appeals Council, this order finds the Appeals Council did not err in its decision that medically-sound services were "available and accessible" to claimant under his plan. Accordingly, pro se claimant's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

## STATEMENT

The essence of this case is that Medicare enrollee, Theodore McElhone, seeks an order reversing the decision of the Medicare Appeals Council which ruled that he was not eligible to receive out-of-network care. The problem arose when claimant requested a referral to specialists whom he believed could treat his injury. His medical provider denied the referral and plaintiff appealed. Because this order finds that claimant failed to exhaust the administrative appeals process and because the Appeals Council's decision was supported by substantial evidence, the relief requested by claimant is denied.

**1. FACTUAL BACKGROUND.**

The factual history of this action is set forth in the administrative record. At all relevant times, plaintiff was enrolled in the Kaiser Permanente Senior Advantage Individual Plan (AR 31). As a Senior Advantage enrollee, plaintiff was required to select a plan provider to be his primary care physician through which he would receive his covered medical care and treatment. Plaintiff's plan provider was Kaiser Foundation Health Plan ("Kaiser") (AR 178).

On July 31, 2007, plaintiff, then sixty five, underwent a hip replacement (AR 367). During discharge, plaintiff sustained an injury to his knees and ankles, for which he was treated with corticosteriods and acupuncture (AR 363). In October 2007 and between March and September 2008, plaintiff was treated by Kaiser physiatrist, Anna Lou. Dr. Lou provided a course of steroid injections, after which, plaintiff rated his pain level as between 0 to 3 out of 10 (AR 370).

On December 11, 2010, plaintiff visited the emergency department of Kaiser Hospital for "chronic right hip/leg pain" following a fall from his bicycle. The attending notes from the hospital stated, "In brief this is a 68 y/o male h/o oa, htn, hl c/o worsening of his chronic right hip/leg pain. He's had this pain since his accident several years ago that preceeded (sic) his right hip replacement" (AR 361). The examining physician advised plaintiff to follow up with his primary care physician for possible referral to a center for physical medicine and rehabilitation.

On December 14, 2010, plaintiff met with Physiatrist Kevin Wang. Dr. Wang ordered a magnetic resonance imaging, which showed mild to moderate degenerative disease, a bulging disc near a right-exiting nerve root, and spinal stenosis. Dr. Wang opined that plaintiff's pain may be related to pes anserine bursitis, greater trochanteric bursitis, iliotibial band syndrome, possible sacroiliac joint arthropathy, and right L4 radiculopathy possibly associated with a disc bulge seen on the MRI (AR 365). Dr. Wang offered to provide epidural steroid injections and sacroiliac injections to treat plaintiff's leg pain. Plaintiff, however, declined (AR 365). Dr. Wang provided referrals for an orthopedic consultation for plaintiff's leg pain, an x-ray for his right knee, and visits to a mind-body wellness center. Dr. Wang advised plaintiff that he would likely

1  have chronic hip/thigh pain for the rest of his life, and that he should focus on managing the pain.
2  Plaintiff later claimed before an administrative law judge ("ALJ") in the present action that Dr.
3  Wang referred him to the pain clinic because he was "inexperience[d] with knee tendonitis"
4  (AR 295).

5  On March 8, 2011, plaintiff met with Benjamin Mandac, the chief of Santa Clara Medical
6  Center's physical medicine and rehabilitation department. They discussed plaintiff's leg
7  discomfort and plaintiff requested a referral to meet with Kaiser Physiatrist Elizabeth Heilman,
8  because "he fe[lt] that her biographic declaration in her home page shows that she is the right
9  person . . . [t]his includes the note that she is a runner" (AR 356). Plaintiff also requested an out-
10 of-network referral to Physiatrist Sherman Tran at Stanford Medical Center. Dr. Mandac, after
11 reviewing plaintiff's symptoms, felt they could "not be explained by orthopaedic causes or spine
12 problems" (*ibid.*). Dr. Mandac suggested that a vascular evaluation may be helpful as a vascular
13 claudication may explain his symptoms. Dr. Mandac offered to discuss this with plaintiff's
14 primary care physician, however, plaintiff chose not to see a vascular surgeon and instead
15 contacted Kaiser Member Services to request a referral to one of the two aforementioned
16 physiatrists, one within plan and the other out of plan.

17 On March 22, 2011, Kaiser declined plaintiff's referral requests. Kaiser determined that a
18 referral to Dr. Heilman was not medically indicated as she "sub-specializes in neurological
19 rehabilitation and palliative care, but does not have unique experience with musculoskeletal
20 issues" (AR 400). Kaiser also found that a referral to Dr. Tran was not proper, as appropriate care
21 was available within the Kaiser network by a referral to Dr. William Firtch, the head of the
22 physical-medical rehabilitation department at Kaiser's Redwood City Medical Center, who
23 specializes in musculoskeletal issues. Accordingly, Kaiser declined plaintiff's referral requests
24 and offered treatment with Dr. Firtch. Plaintiff declined Kaiser's offer, however, and instead
25 requested a reconsideration of the denial (AR 136).

26 In April 2011, Kaiser orthopedist, Dr. Harradine, treated plaintiff with corticosteriod
27 injections that provided some relief of his leg pain (AR 296).

28

3

### 2.  INDEPENDENT REVIEW ENTITY.

On June 15, 2011, the independent review entity, MAXIMUS Federal Services ("Maximus"), upheld Kaiser's denial of the requested referrals and concurred with Kaiser's recommended referral to Dr. Firtch (AR 394–96). After a consulting physician reviewed the dispute, Maximus explained why it sided with Kaiser:

> . . . Dr. Heilman does not appear to meet the criteria for coverage under the rules. According to the doctor, the file indicates that Dr. William Firtch is a board certified physician in physical medicine and rehabilitation and pain medicine. Dr. Firtch also completed a fellowship in sports orthopaedics and rehabilitation. The file also shows that Dr. Heilman is a board certified physician in physical medicine and rehabilitation. Given the extensive treatments that you have received in the past for your chronic leg pain, the doctor found that a referral to an in-network physician who is certified in both physical medicine and rehabilitation as well as pain medicine, rather than only physical medicine and rehabilitation, appears to be correct and appropriate.

(AR 396). Similarly, MAXIMUS confirmed Kaiser's denial of plaintiff's request to be examined by Dr. Tran, noting that Dr. Tran was "not in the plan network," whereas Dr. Firtch was within plan.

### 3.  ALJ REVIEW.

On July 14, 2011, plaintiff requested a hearing before an ALJ. The hearing was conducted in two parts, on October 13 and 20, 2011. Plaintiff testified at both hearings.

#### A.  October 13 Hearing.

On the day before the first hearing, plaintiff submitted a list of three orthopedists with whom he wanted a consultation (AR 235–36). These orthopedists were all out-of-network providers, one of whom practiced at Stanford Medical Center. Kaiser, for its part, prepared a list of in-network physiatrists whom plaintiff could choose for treatment. The ALJ asked plaintiff whether he would be willing to meet with a Kaiser physiatrist and plaintiff declined for two reasons. *First*, plaintiff argued that Kaiser failed to identify which doctors on the list specialized in treating "soft tissue injury" (AR 460). *Second*, plaintiff stated that he had:

4

> . . . a very strong growing doubt that physiatry is at all the treating specialty for this kind of injury. All of the information that's available by reports that are findable on National Library of Medicine indicates that the specialty regarding muscle injuries of my kind is more appropriately dealt with by clinical orthopedics.
>
> \* \* \*
>
> Certainly, Kaiser has had since August 3, 2007 to provide a doctor and they have not been willing or able to provide someone who knows what's going on.

(*ibid.*).

The ALJ then asked whether the need for a specialist other than a physiatrist had previously been addressed in the appeals process. Plaintiff claimed that it had:

> It was addressed as [to] what kind of specialist would be the appropriate one. And I specifically talked about the kinds of reports on compartment syndrome of the thigh having been written by clinical orthopedists and having found no physiatrist at all in that range of — I mean, that particular care. So I did raise that point at that time.

(AR 462).

The ALJ asked again later in the proceeding, "Again, I don't — I'm sorry. I don't recall and my notes don't indicate, but why are we concentrating on physiatrists at this point?" Kaiser's representative seemed equally unsure:

> You know, I can't even recall here. You know, I — I'm sorry, your honor. I don't recall. The note that I have here is that Dr. Firtch is Board-certified. That was the recommendation and it appears that that was the appropriate referral at this time. I apologize. I don't remember all of the details here.

(AR 465).

Kaiser's representative noted that she had spoken with Dr. Heileman, the physiatrist in Kaiser's network that plaintiff originally requested, and that Dr. Heileman said that she was not an appropriate physician for plaintiff. Kaiser's representative said that Dr. Firtch wished to have a consultation with plaintiff and that if he "is not the appropriate doctor, then maybe we will have to make a recommendation for [plaintiff] to be seen out of plan" (*ibid.*).

The ALJ concluded the hearing by noting that:

> . . . it seems to me that if an orthopedist is the kind of doctor that's needed, we ought to have [plaintiff] looked at by your doctor Firtch and have Dr. Firtch tell us that, and then, if you could, be ready to find a doctor that's suitable in terms of an orthopedic doctor for Mr. McElhone.  And so, if you would, I essentially am going to give you one more shot at trying to find somebody within the Plan.
>
> \*       \*       \*
>
> I am of the opinion that probably at this point in time, after these many years, that Mr. McElhone knows what he needs and I think that at least we ought to make a serious attempt to get him treated.

(AR 466, 472).

### B. October 20 Hearing.

At the second hearing, the ALJ expressed frustration with the results of plaintiff's visit to Dr. Firtch.  Dr. Firtch wanted to perform more tests on plaintiff including a new lumbar MRI scan, electrodiagnostic testing for nerve functioning, additional lab testing, and a plan for follow-up contact to discuss the next steps after testing was complete (AR 488).  The ALJ agreed with plaintiff that this amounted to unnecessary testing as plaintiff had already undergone an MRI for the same condition two years earlier.

The ALJ also found that Kaiser had not provided plaintiff the type of care he needed:

> Kaiser is, as — I agree with [plaintiff] — is — has been messing around with attempting to control his pain and that's not sufficient. You have to do something in order to not just treat the symptom of pain, but to do something about what's causing the pain, and I don't think Kaiser has done that.  I don't think that they've been diligent in their attempting to treat [plaintiff].
>
> \*       \*       \*
>
> Well, here's what I'm going to do . . . I'm going to write a decision that is favorable to [plaintiff] that orders [Kaiser] to provide [plaintiff] with a out-of-plan doctor.  If [plaintiff] wants, I can specifically name Stanford as the place where the doctor is and name the doctor.  And in that time, if Kaiser . . . wants to do what's right, they will have [plaintiff] treated by either that doctor or another doctor that knows what he's doing, that doesn't treat the pain, that doesn't have him going through more tests and things like that.  There's plenty of evidence in the record as to what's wrong with [plaintiff].
>
> And so, in [a] month's time or so before that order comes out, [Kaiser] ha[s] a chance to make good on the order.  If not, the order will stand

and I will order [plaintiff] to be treated by an out-of-patient (sic) doctor.

(AR 495–96).

The ALJ found that since plaintiff's symptoms had developed in 2007, Kaiser had routinely referred him to a pain clinic to manage the pain rather than to physicians who could treat the symptoms. The ALJ held that "since Kaiser has been unable to provide the appropriate care for [plaintiff] in the last four years, the ALJ finds that it is medically reasonable and necessary for [plaintiff] to be seen at the Stanford Medical Center for appropriate care" (AR 204).

### 4. APPEALS COUNCIL.

On March 28, 2012, Kaiser timely appealed the ALJ's decision, arguing that the medical evidence did not support either the diagnosis or the claim that Kaiser physicians were unable to treat plaintiff's condition (AR 184–206). The Appeals Council conducted a *de novo* review and reversed the ALJ's decision (AR 21–25). The Appeals Council examined whether plaintiff had proven, by a preponderance of the evidence, that "network providers are unavailable or inadequate to meet [his] medical needs" necessitating payment for an out-of-plan referral. 42 C.F.R. 422.112(a)(3).

The Appeals Council found that the ALJ had erred in his order that Kaiser should cover all appropriate care at Stanford Medical Center both as a matter of law and on the merits (AR 22).

As to the merits, the Appeals Council determined that the medical record did not support the ALJ's finding that plaintiff had a single, continuing condition of compartment syndrome of the thigh, which Kaiser's physicians failed or refused to treat. Rather, the Appeals Council found that the medical record showed "multiple injuries and periods of response to treatments" (AR 23). Furthermore, the ALJ "had no basis for his apparent assumption that Dr. [Firtch] could not provide adequate treatment" (*ibid*.). "The only basis for the purported diagnosis of compartment syndrome of the thigh was [plaintiff's] submission of a single medical report on 17 patients at a shock trauma center, of whom eight died" (*ibid*.). Nor was it evident from the medical record that plaintiff met the criteria for diagnosis discussed in the article. Plaintiff presented no evidence that

7

he had either shown this article, or presented the idea that he suffered from this condition, to a physician within his plan (AR 23–24).

The Appeals Council also concluded that the ALJ's decision was improper as a matter of law in several regards. *First*, the Appeals Council noted that at the redetermination and independent entity review levels, the only claim plaintiff presented was Kaiser's denial of his request for a referral to in-plan physiatrist, Dr. Heilman, or out-of-plan physiatrist, Dr. Tran. Plaintiff's request for a referral to an out-of-plan orthopedist at Stanford Medical Center was raised for the first time before the ALJ immediately before the first hearing. As such, the Appeals Council found that plaintiff had not properly exhausted his administrative remedies as to whether proper orthopedic services were available through Kaiser (AR 23).

*Second*, the Appeals Council found that since plaintiff no longer wished to see either of the physiatrists he originally requested, "the original challenge to the Kaiser determination denying access to the out-of-network physiatrist is effectively moot" (AR 23).

*Third*, the Appeals council held that the ALJ's decision was "excessively broad," as it referred plaintiff to an outside institution for "appropriate care," without limiting him to a specific orthopedist or a specific operation (AR 24).

**ANALYSIS**

**1. LEGAL STANDARD.**

The Medicare program, established by Title XVIII of the Social Security Act, provides payment for medical care for the aged and disabled. Eligible beneficiaries receive medical care from "providers," which are medical care facilities that have entered into agreements with the Secretary to furnish care, and the providers are then reimbursed by the Medicare program. Part C of the Medicare program allows authorized individuals to elect to receive Medicare benefits through enrollment in health maintenance organizations ("HMO") offered by a Medicare Advantage organization's Medicare Advantage plan. 42 U.S.C. 1395w-27. By enrolling in the Medicare Advantage plan, the beneficiary agrees to receive covered benefits from the HMO directly, or made by the HMO with health care providers outside of the organization.

42 U.S.C. 1395w022(d)(1). While an HMO generally has discretion whether to approve out-of-plan services, they are required to provide payment for certain services. 42 C.F.R. 422.2.

The Appeal Council's ruling is the final decision of the Secretary, *Conahan v. Sebelius*, 659 F.3d 1246, 1249 (9th Cir. 2011) (citing *Heckler v. Ringer*, 466 U.S. 602, 607 (1984)); thus the Appeals Council's factual findings must be upheld if they are supported by substantial evidence. 42 U.S.C. 405(g); *Mayes v. Massanari*, 276 F.3d 453, 458–59 (9th Cir. 2001). Substantial evidence is "more than a mere scintilla," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401(1971) (internal citation omitted). The agency's interpretation of its own regulations receives "substantial deference" and "must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (internal citation omitted). "An ALJ cannot add any claim" to a pending appeal, even if the claim is "related to an issue that is appropriately before an ALJ, unless it has been adjudicated at the lower appeals levels and all parties are notified of the new issue before the start of the hearing." 42 C.F.R. 405.1032(c).

In the present action, plaintiff sought treatment from an out-of-plan orthopedist for the first time before the ALJ. On August 23, 2011, plaintiff filed a response to the hearing notice. Plaintiff objected to the issues described in the notice, requesting the ALJ add "issue of assignment of specialist who treats injuries to thighs and hips" (AR 89). It was not until he appeared before the ALJ that plaintiff expressed the belief that "Physiatrics had nothing to offer" and that Kaiser's rehabilitation department "substitut[ed] Mind Conditioning for physical treatment of chronic injuries" (AR 295). In the hearings before the ALJ, plaintiff's claim flipped from a redetermination of whether Kaiser should be required to provide coverage for him to consult with physiatrist Dr. Heilman or out-of-plan physiatrist Dr. Tran, to whether plaintiff could seek treatment from an out-of-plan orthopedist. The ALJ did not have authority to adjudicate this claim because it had not been considered at the redetermination or independent entity review levels.

9

In addition, substantial evidence supports the Appeals Council's decision to deny plaintiff's request for out-of-plan treatment at Stanford Medical Center because plaintiff did not prove that Kaiser physicians could not provide adequate treatment for plaintiff's leg issue. The ALJ provided no basis for his assumption that Dr. Firtch could not treat plaintiff's condition. Plaintiff, for his part, refused to even undergo the tests that Dr. Firtch sought to perform between the hearings before the ALJ. Without knowing the recommendations of Dr. Firtch, it is impossible to say whether plaintiff would have been referred to a physiatrist or orthopedist, whether in or out of plan. Kaiser is only responsible for providing out-of-plan care when its own network is inadequate or unavailable. This order rejects plaintiff's implicit contention that he can refuse appointments with in-network providers and, at the same time, argue that alternative options were not made available to him. To accept plaintiff's argument would place on physicians and HMO's an exceedingly high burden, requiring them to nearly force services upon patients. Such a requirement would clearly be more burdensome than the standard outlined in 42 C.F.R. 422.112(a)(3).

Furthermore, the administrative record does not support the ALJ's determination that plaintiff actually suffers from compartment syndrome of the thigh. No physician has diagnosed plaintiff with that condition. The Appeals Council noted that the only basis for the purported diagnosis of compartment syndrome of the thigh was plaintiff's submission to the ALJ of a single medical article about patients at a shock trauma center (AR 311–28, 356–90, 404–07). Plaintiff presents no evidence that he ever discussed this condition with any physician. Thus, there is no medical evidence in the record to show that Dr. Firtch, or other Kaiser doctors, could not provide adequate treatment had plaintiff raised his concerns with them and cooperated with their treatment.

In challenging the Appeals Council's decision, plaintiff makes several arguments. *First*, plaintiff contends that the ALJ resolved the issue in dispute in his favor, that the ALJ rejected the final medical report of Dr. Firtch, and that the Court should leave in place the decision of the ALJ where it is supported by substantial evidence and the record as a whole. In

essence, plaintiff argues that the ALJ's decision is the one entitled to deference. Plaintiff's arguments fail, however, as it is the Appeal Council's ruling that is the final decision of the Secretary, not the ALJ's ruling.

The Appeals Council reviewed the ALJ's decision *de novo*, as authorized by 42 C.F.R. 405.1100(c), and when it reversed, its decision became the final decision of the Secretary. *Conahan v. Sebelius*, 659 F.3d 1246, 1249 (9th Cir. 2011). On judicial review, "the findings of the Secretary of HHS as to any fact, if supported by substantial evidence, are conclusive." 42 C.F.R. 405.1136(f)(1). In addition, the agency's interpretation of its own regulations receives "substantial deference" and "must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ.*, 512 U.S. at 512 (1994) (internal citation omitted). In other words, the Court's task "is to review the decision of the Appeals Council under the substantial evidence standard, not the decision of the ALJ." *See Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986).

Accordingly, our review is whether the Appeals Council's factual findings were supported by substantial evidence. 42 U.S.C. 405(g). For the reasons enumerated above, this order finds that they were.

*Second*, plaintiff argues that the Appeals Council was wrong to hold that the ALJ's decision was "excessively broad" because it referred plaintiff to an outside institution for "appropriate care" without limiting him to a specific orthopedist or a specific operation (AR 24). Because this order upholds the decision of the Appeals Council on other grounds, this argument is effectively moot.

*Third*, plaintiff contends that Kaiser failed in its duty to keep proper records of plaintiff's medical history. Specifically, plaintiff argues that the Appeals Council lacked records of his medical visits between April 15, 2008, and December 20, 2010, and these records were never shown to the ALJ (Br. 18–21). Plaintiff, however, alleges the existence of these medical records without explaining their importance. Nor does he allege a conspiracy to prevent him from presenting these records himself during the review process. There is no evidence that these

11

medical records could address the exhaustion problem in plaintiff's argument. The mere absence of medical records not contained within the administrative record hikdoes not prove that the Appeals Council's decision was "arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence on the record taken as a whole." *Wilmot Psychiatric/Medicenter Tucson v. Shalala*, 11 F.3d 1505, 1506 (9th Cir. 1993).

*Fourth*, plaintiff argues that issue exhaustion is not an administrative requirement where the proceeding is "inquisitorial in nature" (Br. 21). Plaintiff argues that the Supreme Court's plurality decision in *Sims v. Apfel*, 530 U.S. 103, 120 (2000), makes issue exhaustion requirements inapplicable here. Not so. In *Sims*, the Supreme Court indicated that judicially created issue exhaustion is not always appropriate. The Court considered whether a person claiming Social Security benefits waived judicial review of issues not raised before the Appeals Council. A plurality determined that when *neither statute nor regulation* requires issue exhaustion, judicially created issue exhaustion is inappropriate where the administrative proceeding was informal and "inquisitorial rather than adversarial," and the claimant exhausted administrative remedies. *Id*. at 108. On the other hand, if an agency's regulations provide that a petition for review must "list the specific issues to be considered on appeal," plaintiff must meet the exhaustion requirements. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 630 (9th Cir. 2008).

Here, the Code of Federal Regulations specifically states that an ALJ cannot add any claim to a pending appeal, even if the claim is "related to an issue that is appropriately before an ALJ, unless it has been adjudicated at the lower appeals levels and all parties are notified of the new issue before the start of the hearing." 42 C.F.R. 405.1032(c). Accordingly, the ALJ lacked discretion to send plaintiff to an out-of-network orthopedist when that issue was not the claim adjudicated at the lower appeals levels.

The Court is not unsympathetic to plaintiff's serious medical situation. The Court cannot, however, render legal decisions based upon sympathy while ignoring the facts and law. This

12

order, therefore, finds that the Appeals Council did not err in concluding that Kaiser is not required to pay for plaintiff's out-of-plan care at Stanford Medical Center.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.  Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated:  March 14, 2014.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13